**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

DEEP SEA FISHERIES INC; DEEP SEA
HARVESTER, INC.,
          *Claimants-Appellants,*

          and

JOHN R. BOGGS, President Deep
Sea Fisheries Inc.; GLOBAL FISHING
INC, a Washington Corporation;
KAMCHATCOMAGROPROMBANK, a
Russian chartered bank,
          *Claimants,*

          v.

144,774 POUNDS OF BLUE KING
CRAB, more or less,
          *Defendant.*

No. 03-36006

D.C. No.
CV-02-02167-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief Judge, Presiding

Argued and Submitted
May 2, 2005—Seattle, Washington

Filed June 9, 2005

Before: J. Clifford Wallace, Barry G. Silverman, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Silverman

6771

## **COUNSEL**

John M. Colvin, Chicoine & Hallett, P.S., Seattle, Washington, for the claimants-appellants.

John McKay, Peter O. Mueller, and Richard E. Cohen, United States Attorney's Office, Seattle, Washington, for the plaintiff-appellee.

## OPINION

SILVERMAN, Circuit Judge:

King crab taken in violation of Russian fishing regulations is subject to forfeiture under the Lacey Act, 16 U.S.C. § 3374(a), on a strict liability basis. The question before us is whether an importer of such crab may assert an "innocent owner defense" in forfeiture proceedings. Under the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983, the innocent owner defense cannot be asserted when the property to be forfeited is "contraband or other property that it is illegal to possess."

We hold today that if the crab at issue here was imported, received, or acquired in violation of the Lacey Act, 16 U.S.C. § 3372(a), it constitutes "property that it is illegal to possess" for the purposes of 18 U.S.C. § 983(d)(4).

## I. BACKGROUND

This interlocutory appeal arises out of a claim to king crab made by appellants Deep Sea Fisheries and Deep Sea Harvester (collectively, "Deep Sea"). The king crab at issue was caught within the Russian Exclusive Economic Zone ("EEZ") by two Russian vessels, the F/V Deep Sea Harvester and the F/V Lucky Star. The crab was transferred to the M/V Vlada, a Russian transport ship, which transported the crab out of the EEZ to Vancouver, B.C. Deep Sea imported the crab into the United States at Blaine, Washington, where it was detained by United States Customs officials.

The United States brought this action for forfeiture of the defendant 144,774 pounds of cooked, frozen blue king crab for violation of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A). The government alleged that the crab had been taken, possessed, transported, and sold in violation of the fishing and resource protection laws of the Russian Federation. The United States asserted that the M/V Vlada had failed to maintain its vessel monitoring system, which provides information about the location of the vessel and the amount of catch on board, in continuous operation during the time the vessel was in use, as required by Russian law. The M/V Vlada had reported that it was going to Dutch Harbor, Alaska, for major repairs and turned off its monitoring equipment, but subsequent inquiry by United States authorities determined that the M/V Vlada had not undergone repairs at Dutch Harbor and had instead left that port after three days and was crabbing off the books. Russian authorities reported that if the M/V Vlada had taken on the crab in the EEZ, the vessel had violated Russian law because it had not reported the loading or transport of the crab.

Deep Sea filed a statement in response to the forfeiture action claiming an interest in the crab based upon a security interest in the catch of the Russian fishing vessels. Deep Sea also filed an answer to the complaint claiming a lack of knowledge that the crab was caught or transported in violation of Russian fishing laws and raising innocent ownership as an affirmative defense under 18 U.S.C. § 983.

The district court ordered Deep Sea to show cause why the court should not order summary judgment precluding Deep Sea from raising the innocent owner defense based on the government's argument that the such a defense could not be raised with respect to the crab because the crab was, in the words of 18 U.S.C. § 983(d)(4), "contraband or other property that it is illegal to possess." Deep Sea responded that because the crab was not inherently illegal to possess, it was not contraband for the purposes of the innocent owner defense.

The district court granted partial summary judgment in favor of the United States, holding that the crab was contraband and striking Deep Sea's innocent owner defense. The district court reasoned that "contraband" as used in CAFRA "includes both goods that are inherently illegal to possess and otherwise legal goods that have been imported or exported illegally." Deep Sea filed a motion seeking reconsideration of the order, arguing that the district court's construction of the term "contraband" to include illegally imported goods would result in disparate treatment between fish caught in violation of domestic law and fish caught in violation of international law. The district court denied the motion for reconsideration, but certified an interlocutory appeal of its ruling striking the innocent owner defense pursuant to 28 U.S.C. § 1292(b). We permitted an interlocutory appeal to be taken.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to consider an order certified for interlocutory appeal under 28 U.S.C. § 1292(b). *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). We review de novo the district court's construction of a statute. *United States v. Cabaccang,* 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc).

## III. DISCUSSION

### A. The Statutory Language

We must decide whether fish, wildlife, or plants taken, possessed, transported, or sold in violation of foreign law and subject to forfeiture under the Lacey Act constitute "contraband or other property that it is illegal to possess" under 18 U.S.C. § 983(d)(4), thus precluding the assertion of an innocent owner defense in an action to forfeit the items.

### 1. The Lacey Act

[1] The Lacey Act provides that it is unlawful for any person —

(1) to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law;

(2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce —

> (A)   any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law;

> (B)   any plant taken, possessed, transported, or sold in violation of any law or regulation of any State; or

> (C)   any prohibited wildlife species (subject to subsection (e) of this section) . . . .

16 U.S.C. § 3372(a).

[2] Separate provisions of the Lacey Act provide civil and criminal penalties for Lacey Act violations. 16 U.S.C. § 3373. The Lacey Act also has a strict liability forfeiture provision:

> All fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of section 3372 of this title (other than section 3372(b) of this title), or any regulation issued pursuant thereto, shall be subject to forfeiture to the United States notwithstanding any culpability requirements for civil penalty assessment or criminal prosecution included in section 3373 of this title.

16 U.S.C. § 3374(a)(1).

## 2. The Civil Asset Forfeiture Reform Act

[3] Enacted in 2000, the Civil Asset Forfeiture Reform Act ("CAFRA") sets forth the procedures used in all civil forfeitures under federal law unless the particular forfeiture statute is specifically exempted in 18 U.S.C. § 983(i)(2). Section 983(d) provides the following innocent owner defense to a civil forfeiture:

(1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

\* \* \*

(3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property —

(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and

(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

\* \* \*

(4) Notwithstanding any provision of this subsection, no person may assert an ownership interest

under this subsection in contraband or other property that it is illegal to possess.

**[4]** In construing a federal statute, we first look at the plain meaning of the language in question. *United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 825 (9th Cir. 1989). "It is a maxim of statutory construction that unless otherwise defined, words should be given their ordinary, common meaning." *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1032 (9th Cir. 1987). Here, the plain meaning of "contraband" is not defined in the statute, nor is it immediately apparent. Black's Law Dictionary defines contraband as, "1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export, or possess." BLACK'S LAW DICTIONARY (8th ed. 2004). The district court relied on the dictionary definition of "contraband" for the conclusion that "contraband" is commonly used to denote illegally imported goods. However, we do not need to reach the question of what "contraband" means if we can determine the meaning of "other property that it is illegal to possess" from the plain wording of the statute.

Deep Sea argues that it is entitled to raise the innocent owner defense because Congress intended "contraband" to mean "contraband per se," or items that are inherently illegal to possess. Deep Sea argues that the "or other" indicates that "contraband" is one type of a larger category of property "that it is illegal to possess." Deep Sea asserts that "property that it is illegal to possess" means property whose possession is inherently illegal, and that because there is nothing inherently illegal about the possession of king crab, it should be permitted to raise an innocent owner defense.

**[5]** It is an accepted canon of statutory interpretation that we must interpret the statutory phrase as a whole, giving effect to each word and not interpreting the provision so as to make other provisions meaningless or superfluous. *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991); *see also United States v. Menasche*, 348 U.S. 528,

538-39 (1955). As the government argues, the fact that "contraband" and "other property that it is illegal to possess" are separated by an "or" signifies that Congress intended them to mean two separate things. *See Prince v. Jacoby*, 303 F.3d 1074, 1080 (9th Cir. 2002). Congress's use of "other" following the "or" also connotes that items besides "contraband" were contemplated to be exempted from the innocent owner defense. Deep Sea's proposed construction, that "property that it is illegal to possess" has an identical definition to "contraband," which it defines as contraband per se, contravenes our duty to give independent meaning to both phrases in the statute.

We believe that the phrase "other property that it is illegal to possess" includes property that becomes illegal to possess because of extrinsic circumstances. Such a determination resolves the controversy before us. We do not need to ascertain whether Congress intended "contraband" to refer only to "contraband per se" because we conclude that, if the government establishes that the crab at issue here is taken, possessed, transported, or sold in violation of Russian law, it is "other property that it is illegal to possess."

Deep Sea also argues that it is ambiguous whether the crab here is in fact actually illegal to possess. Deep Sea asserts that the possession of crab is not in itself illegal. Rather, the crab at issue is merely tainted by the associated violations of Russian law and the importation of the property into the U.S., thereby rendering acquisition of the crab illegal under the Lacey Act. Accordingly, Deep Sea argues that the crab is not "property that it is illegal to possess."

We disagree. We do not find dispositive the fact that the government must prove that the crab here is the product of violations of Russian law in a forfeiture proceeding before it is determined to be "illegal to possess."

Even in the most obvious cases of property that it is illegal to possess, the government must prove certain elements

before possession is deemed unlawful. For example, Deep Sea concedes that certain types of pornography are "generally understood by the public to be illegal to possess." We assume that Deep Sea includes child pornography within this category. However, 18 U.S.C. § 2252 makes possession of child pornography unlawful only if the depiction is of an actual minor, and the pornography was transported or shipped in interstate or foreign commerce. *Id.* § 2252(a)(1); *cf. Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 258 (2002) (holding that ban on virtual child pornography was unconstitutionally overbroad because it proscribed speech that was neither child pornography nor obscene).

[6] Although we decline to specifically determine which items are contraband and which items are illegal to possess because of extrinsic circumstances, it is sufficient to determine that "property that it is illegal to possess" includes items that may be legally possessed in some circumstances but that become illegal to possess in others. For example, liquor or cigarettes that generally may be legally possessed by consumers may become illegal to possess if they fail to bear the appropriate tax stamps. *See, e.g., United States v. Baker*, 63 F.3d 1478, 1487 (9th Cir. 1995) ("[u]nder Washington law, mere possession of unstamped cigarettes, even by an Indian, is prohibited if the cigarettes are not preapproved for tax exemption").

Under the Lacey Act, it is unlawful for a person to "import, . . . sell, receive [or] acquire . . . any fish or wildlife taken, possessed, transported, or sold in violation of . . . any foreign law." 16 U.S.C. § 3372(a)(2)(A). As a result, it is clear that if the government can establish that the crab was received in violation of § 3372(a)(2)(A), the crab is "property that it is illegal to possess."

[7] Finally, because we hold that the crab in question here fits within the rubric of "other property that it is illegal to possess," we need not decide whether "contraband" is limited to

"contraband per se," or whether it also includes illegally imported goods as determined by the district court. We conclude that in wording the CAFRA innocent owner exception the way it did — especially with its use of "or other" — Congress intended to preclude the assertion of an innocent owner defense in *both* items that are inherently illegal to possess *and* property that is otherwise illegal to possess because of extrinsic circumstances. Our conclusion is bolstered by a similar formulation found elsewhere in the statute. *See* 18 U.S.C. § 983(a)(1)(F) ("[t]he Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess"); *see also Boise Cascade Corp.*, 942 F.2d at 1432 (interpreting court should assume that words used more than once in the same statute have the same meaning). Because the meaning of "other property that it is illegal to possess" is clear from the wording of the statute, we need not resort to the legislative history of CAFRA to ascertain congressional intent. *See Whitfield v. United States*, 125 S. Ct. 687, 692 (2005).

## IV. CONCLUSION

**[8]** We hold that Deep Sea may not raise an innocent owner defense here because, if the government can establish that the crab was taken, possessed, transported, or sold in a way that rendered it illegal under Russian law, the crab is "property that it is illegal to possess" for the purposes of 18 U.S.C. § 983(d)(4). It is illegal to posses not because crab is inherently unlawful, but because this particular shipment of crab allegedly was received and acquired in a way that rendered it illegal under the Lacey Act, 16 U.S.C. § 3372(a).

Although the language of CAFRA, 18 U.S.C. § 983(d)(4), is ambiguous with regard to the definition of contraband, we need not resolve this issue because if the crab at issue here was imported, received, or acquired in violation of the Lacey Act, 16 U.S.C. § 3372(a), it constitutes "property that it is illegal to possess" for purposes of section 18 U.S.C. § 983(d)(4).

The district court's order striking Deep Sea's innocent owner defense is AFFIRMED.